UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Allen Newman and Deborah Newman,
d/b/a Twin Haven Mink Ranch,

Plaintiff,

vs. ORDER

United Vaccines, Inc., a division
of Harlan Sprague Dawley, Inc.,

Defendants. Civ. No. 00-257 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 23rd day of July, 2002.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 18 U.S.C. §636(c), upon the Plaintiffs' Motion for Leave to Amend Complaint, in order to add a claim under the Minnesota Consumer Fraud Act ("CFA"), Minnesota Statutes Section 325F.68-70, as implemented by the Minnesota Private Attorney General Statute ("Private AG Statute"), Minnesota Statutes Section 8.31, Subdivision 3(a), which also allows for an award of reasonable attorneys' fees, and costs. A Hearing on the Motion was conducted on May 8, 2002, at which time, the Plaintiffs appeared by H. Morrison Kersh-

(60)

FILED JUL 23 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

ner, Esq., and the Defendant appeared by Timothy J. Fetterly, Esq. For reasons which follow, we deny the Plaintiffs' Motion.

## II. Factual and Procedural History

The Plaintiffs commenced this action in February of 2000, asserting claims of strict liability, negligence, false representation, and breach of express and implied warranties, based upon the alleged failure of the Defendant's BIOCOM-DP vaccine, serial PB-13, to innoculate their mink against canine distemper. Subsequently, the Defendant brought a Motion for Summary Judgment, which urged that each of the Plaintiffs' claims was preempted by the Viruses, Serums, Toxin, and Analogous Products Act ("VSTA"), Title 21 U.S.C. §§151-159. On February 22, 2002, we issued our Order, which granted the Defendant's Motion as to the Plaintiffs' strict liability, negligence, and breach of implied warranty claims.

In support of their claims for a breach of express warranty, for false representation and, if allowed, for the purported violation of the CFA, the Plaintiffs allege that they had purchased the Defendant's product in reliance upon representations made by the Defendant's agent, to the Plaintiffs and other mink farmers, that the Defendant's vaccine was "95 percent effective in preventing distemper in mink." Complaint, at 2. In addition, the Plaintiffs allege that they had "purchased and used the distemper vaccine in reasonable reliance upon material representations of facts and

warranties made by defendant on the package label and insert, which included representations that the distemper vaccine 'aids in preventing distemper' and 'BIOCOM-DP has been demonstrated to be a safe and efficacious aid in preventing distemper.'" Id. at 3. We held that the portions of their claim, which were based on the labeling of the product itself, were preempted by VSTA, but those portions which were based on representations about the product's efficacy, and which were made by the Defendant's agent, were not preempted.

The Plaintiffs have now filed a Motion for Leave to Amend their Complaint, in order to add a claimed violation, by the Defendant, of the CFA, and to request an award of attorney fees, and costs, in advancing the CFA claim, as would be allowed under the Private AG Statute. The Motion to Amend is plainly untimely, but the Plaintiffs assert that they have shown good cause to allow such an amendment, and they contend that the amendment will not prejudice the Defendant in any way.[1]

---

[1]Both parties advised the Court that, in deciding this Motion, we should consider the submissions, which relate to the Defendant's Motion for Partial Summary Judgment in Behrens v. United Vaccines, Inc., Civ. No. 00-459, since the issues raised by the two Motions are, in practical effect, identical. As a result, we have considered the referenced submissions in reaching our decision here, and have identified the specific arguments that we adopted from Behrens.

## III. Discussion

The Plaintiffs contend that they have shown good cause to obtain leave to amend their Complaint because, notwithstanding their diligence in researching the issue, they only became aware, that a CFA claim could survive a preemption defense, after we issued our decision in the related case of Behrens v. United Vaccine, Civ. No. 00-459. There, we held that the plaintiffs' CFA claim, which was based upon the same representations at issue here, withstood the Defendant's preemption defense. The Plaintiffs also contend, that the Defendant will not be prejudiced by such a late amendment, and therefore, their Motion should be granted. The Defendant counters that the Plaintiffs' late realization, that a CFA claim could withstand a preemption defense, does not constitute good cause upon which to grant their Motion, because the Plaintiffs were aware that the claim could be asserted, prior to the filing of their Complaint, but elected not to do so. The Defendant also contends that, contrary to the Plaintiffs' assertion, it would be prejudiced by the late amendment, since the CFA claim includes a public benefit element, which is not present in the false representation claim, and which would require some additional discovery. Lastly, and independently, the Defendant argues that the Plaintiffs' Motion should be denied, because the amendment would be futile.

A. Standard of Review. Although the Plaintiffs captioned their Motion as a "Motion for Leave to Amend Complaint Pursuant to Rule 15 of the Federal Rules of Civil Procedure," they admit that, since the deadline of August 25, 2000, for Motions to amend the pleadings has passed, their Motion "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." Alholm v. American Steamship Co., 167 F.R.D. 75, 77 (D. Minn. 1996). As we have recently reiterated:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes--1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mention, therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 581-582 (D. Minn. 1999).

Our application of Rule 16(b) is entirely consistent with Eighth Circuit authority.[2] As our Court of Appeals has most recently explained:

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. See, e.g., Hopkins v. Saunders, 199 F.3d 968, 974 (8th Cir.1999), cert. denied, --- U.S. ----, 121 S.Ct. 176, 148 L.Ed.2d 121 (2000); Gray v. Bicknell, 86 F.3d 1472, 1481 (8th Cir. 1996). As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge." Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them. In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999), cert. denied sub nom. Rainy Lake One Stop, Inc. v. Marigold Foods, Inc., 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000).

Bradford v. DANA Corp., 249 F.3d 807, 2001 WL 422393, *1 (8th Cir., April 13, 2001).

Consequently, "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to main-

---

[2]Local Rule 16.3 serves to further reinforce the need for a party to show good cause, when seeking to extend the deadline for amending the pleadings. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "* * * intended to discourage modifying pretrial schedules unless good cause has been shown." Local Rule 16.3, Advisory Committee Notes.

taining integrity in court proceedings.'" Alholm v. American Steamship Co., supra at 79, quoting Rouse v. Farmers State Bank of Jewell, supra at 1199.

B. Legal Analysis. In support of their Motion to Amend, the Plaintiffs urge that the allowance of the amendment would cause the Defendant no prejudice, since the false representations, which form the basis for the CFA claim, are the same that are said to sustain their false representation, and breach of express warranty claims, and therefore, "merely adds the remedy of investigation expense and attorney's fees pursuant to the" Private AG Statute. Memorandum of Law in Support of Plaintiffs' Motion to Amend the Complaint.[3] However, as we have previously explained, "the perception of prejudice, like beauty, is largely in the eyes of the beholder." Luigino's Inc. v. Pezrow Cos. Inc., supra at 525. "Here, the Defendant can legitimately complain" that, by the Plaintiffs' untimely filing of their Motion after the close of discovery, the Defendant is either denied "an opportunity to fully explore the dimensions of the proposed claim, or requires a further delay in the scheduling of a Trial, as discovery on that issue ensues." Id. The Defendant

[3]Further, the Plaintiff contends that any possible prejudice to the Defendant is diminished by the fact that it is already defending against a CFA claim in the related Behrens v. United Vaccine, Inc. action. However, we have recently considered and granted United Vaccine's Motion for Partial Summary Judgment as to that claim, in Behrens, and thus, this argument must fail.

contends that, as the CFA claim has an element not present in the false representation or express warranty claims -- namely, the presence of a public benefit to the suit -- the new claim might require additional discovery, and would postpone the Trial. "We need not, however, exhaustively examine the issue of prejudice for, as we have already related, Rule 16(b) is driven by 'good cause' on the part of the proponent of a newly formulated claim, and not by a showing of prejudice on the part of the nonmoving party." Luigino's Inc. v. Pezrow Cos. Inc., supra at 525.

The Plaintiffs assert that they have met this standard, and have shown good cause for their untimely Motion because their erroneous conclusion, that a CFA claim could not survive a preemption defense, was based on what they describe as "a good faith evaluation of existing law." See, Affidavit of H. Morrison Kershner in Support of Motion for Leave to Amend Complaint, at 1. We cannot agree that the Plaintiffs' erroneous assessment of the CFA claim is sufficient good cause to allow an amendment to their Complaint at this late date. The discovery deadline has expired, and the parties are set for Trial on September 3, 2002. As such, the time has come for the parties to prepare for Trial on the case that has now been prepared to date, and not one to now be developed.

The Plaintiffs were aware that a CFA claim might be viable since the outset of this litigation, and were also aware of the facts which could be asserted in support of that claim. Their failure to timely plead that claim was based solely on their own misperception of the governing law. Although we are not unsympathetic to the difficulties attendant to determining the viability of claims, particularly in the complex field of preemption as applied to animal biotics, we are unable to find that such a difficulty amounts to good cause under Rule 16. Our decision in Behrens v. United Vaccines Inc., supra, which the Plaintiffs claim alerted them of the propriety of bringing a CFA claim, did nothing to change the current state of the law. Rather, we interpreted, and applied, the existing law on preemption. The assertion that the Plaintiffs could only now see that a CFA claim could withstand Federal preemption is insufficient cause to permit an amendment to their Complaint so close to the scheduled Trial date.

However, even if the Plaintiffs' erroneous assessment of the CFA claim would provide the good cause required for an amendment of a Rule 16 Order, we also conclude that the amendment sought by the Plaintiffs would be futile, because a successful resolution of the Plaintiffs' lawsuit would not provide the public benefit required by the Private AG Statute to afford the Plaintiffs the standing to assert a private claim under the CFA.

The crux of futility argument, presented by the Defendant, is the contention that, while the transaction between the Defendant and the Plaintiffs might be covered by the CFA's protections, the Plaintiffs cannot bring that claim because the Statute which affords authority to commence a CFA claim -- the Private AG Statute -- requires that the action effect a broader, public benefit. The Plaintiffs, on the other hand, urge that because BIOCOM-DP -- albeit not PB13, the particular serial of the product alleged to have harmed the Plaintiffs -- remains on the market, the success of this lawsuit would advance a public benefit, in that it would deter further deceptive advertising concerning BIOCOM-DP's efficacy.

Of course, "[i]n interpreting a state statute, a federal court is bound by the construction given the statute by the highest court within the state." Slaaten v. Cliff's Drilling Co., 748 F.2d 1275, 1276 (8th Cir. 1984), citing Senn v. Tile Layers Protective Union, 301 U.S. 468 (1937); Yoder v. Nu-Enamel Corp., 117 F.2d 488, 489 (8th Cir. 1941). Therefore, we turn to Ly v. Nystrom, 615 N.W.2d 302 (Minn. 2000), in which the Minnesota Supreme Court considered whether a claim could be brought for a one-on-one transaction under the CFA and, if so, whether it could support a claim for attorney's fees under the Private AG Statute. The Court's analysis commenced with a discussion of the purpose behind the CFA, noting that it was adopted to "prohibit deceptive prac-

tices and to address the unequal bargaining power often present in consumer transactions," and was designed to "provide[] the attorney general with the authority to seek and obtain injunctive relief to protect consumers from unlawful and fraudulent trade practices in the marketplace." Id. at 308, citing State v. Philip Morris, Inc., 551 N.W.2d 490, 496 (Minn. 1996). After concluding that the CFA covered the transaction at issue in that case, the Court turned to a consideration of the Private AG Statute.

The Court determined that, under Minnesota Statutes Section 8.31, the Attorney General was provided the authority to seek injunctive relief, and civil penalties, on behalf of the State, "regarding unlawful business practices barred by a variety of statutory prohibitions, including the [CFA]." In addition, the Private AG Statute, Minnesota Statutes Section 8.31, Subdivision 3a, "provide[d] that 'any person injured by a violation' of the laws entrusted to the attorney general to investigate and enforce," including the CFA, "may recover damages together with costs and attorney fees." Id. at 310. Thus, the Private AG Statute was the measure that instilled authority, in individual consumers, to bring actions under the CFA. However, the Court noted that some concern had been raised about the scope of the Private AG Statute, and "particularly as it relate[d] to common law fraud actions and the recovery of attorney fees." Id. at 311. In addressing that con-

cern, the Court related that the purpose of the Statute was to "provid[e] incentives to injured parties to enforce the unlawful business practices statutes as a substitute for the attorney general," as it was "simply impossible for the Attorney General's Office to investigate and prosecute every act of consumer fraud in th[e] state." Id., citing Hearing on S.F. 819, S. Comm. Labor and Commerce, 68th Minn. Leg., March 8, 1973 (audiotaped comments of Sen. Borden, Senate sponsor of the Bill).

The Court also noted, however, that, due to the limited purpose of the Private AG Statute, the Minnesota Courts of Appeal had "expressed reservations about broadening the scope of" the Private AG Statute, and "ha[d] required a showing of public benefit" as a predicate to an award of attorney fees under that Statute. Id. In particular, the Court of Appeals had warned, that Courts "must take into account the degree to which the public interest is advanced by the suit, * * * otherwise 'every artful counsel could dress up his dog bite case' to come under the attorney's fees statute." Lies v. Lindemyer, 354 N.W.2d 556, 558 (Minn.App. 1984), quoting, Boland v. City of Rapid City, 315 N.W.2d 496, 503 (S.D. 1982); see also Wexler v. Brothers Entertainment Group, 457 N.W.2d 218, 222-23 (Minn.App. 1990).

The Court recognized that, in determining the proper scope of the authority granted by the Private AG Statute, it had to base its

assessment on the fact that the Statute had been originally adopted "as part of the statutory charter for the duties and responsibilities of the attorney general." Since the private litigant would be acting in lieu of the Attorney General, the scope of the Attorney General's roles and duties, would properly define the scope of the private litigant's roles and duties. Under Minnesota Statutes Section 8.01, the Attorney General was to "appear for the state in civil lawsuits 'whenever, in the attorney general's opinion, the interests of the state require it.'" Id. Conversely then, the Attorney General, and the private litigant, who is acting in the Attorney General's stead, cannot act "to protect private or individual interests independent of the public purpose." Id.

In finding a public benefit requirement, the Court reasoned, in part, as follows:

> [T]he legislature could not have intended to sweep every private dispute based on fraud, and falling within the CFA, into a statute where attorney fees and additional costs and expenses would be awarded, because to do so would substantially alter a fundamental principle of law deeply ingrained in our common law jurisprudence -- that each party bears his own attorney fees in the absence of a statutory or contractual exception.

Id. at 314.

Ultimately, the Court held that "the Private AG Statute applie[d] only to those claimants who demonstrate that their cause of action benefits the public." Id. at 314.

Here, the Defendant argues that the Plaintiffs cannot meet this requirement, because their claim seeks redress for an essentially personal injury -- the injury to their business -- and therefore, their action does not promote a public benefit. In addition, the Defendant insists that "the United States Department of Agriculture (USDA) directed [the Defendant] to stop distribution of Lot PB13 of BIOCOM-DP, the vaccine at issue in this case, on January 6, 2000" and thus, "even if the vaccine at issue was defective, it cannot cause harm to any other members of the public." Defendant's Memorandum in Opposition to Plaintiffs' Motion to Amend Complaint, at 6. In response, the Plaintiffs maintain that the product at issue is BIOCOM-DP, and not merely the serial that they actually purchased, because the representations, which form the basis of their remaining claims, related to the product as a whole.[4] Since only certain serials of the product have remained off-the-market, as a result of the hold put on their sale by the United States Department of Agriculture ("USDA"), the Plaintiffs insist that, if successful, their lawsuit could prevent false or misleading advertising, as to BIOCOM-DP in general, which would be a public benefit.

[4]We have adopted this argument from the plaintiff's submissions in Behrens v. United Vaccine. See, footnote 1, supra.

In support of their argument, the Plaintiffs cite Collins v. Minnesota School of Business, Inc., 636 N.W.2d 816 (Minn.App. 2001), in which the Minnesota Court of Appeals applied the public benefit requirement, which was enunciated in Ly v. Nystrom, to former students of a school, who sued for damages arising from their enrollment in a particular program, and who claimed that they had been induced to enroll in that program by a false and misleading advertisement. The parties settled the case, and then the plaintiffs sought an award of costs and fees, including attorney fees, under the Private AG Statute. The State District Court denied the plaintiffs' Motion for fees under the Statute, finding that their suit did not benefit the public as required. Id. at 820. However, the Court of Appeals disagreed. It related that the defendant had "promoted its sports-medicine-technician program through television advertisements and sales presentations," and that, "[a]s a result of [the] lawsuit, [it] had stopped its television advertisements, and changed the program's name and curriculum." Id. The Court noted "that federal courts ha[d] consistently held that the prevention of false or misleading advertising is a public benefit" and, applying that principal to the circumstances before it, where the defendant had "advertised its program to the public at large," it concluded that, "[b]ut for the appellants' lawsuit, an indefinite class of potential consumers

might have been injured in the same manner as were appellants." Id. at 821.

The Plaintiffs contend that their case is factually similar to the facts presented in Collins, because they were induced into purchasing the Defendant's product by the representations of the Defendant's agent which, they allege, were false and misleading to the public at large. According to the Plaintiffs, just as in Collins, their lawsuit will aid an "indefinite class of potential consumers," who might otherwise be "injured in the same manner" as they were, and that thus, their claim is unlike the one-on-one transaction considered in Ly v. Nystrom, supra. Id. at 821. The Defendant counters, however, that, since the Plaintiffs' lawsuit post-dated the removal, by the USDA, of their serial from the marketplace, the Plaintiffs cannot responsibly contend, as did the plaintiffs in Collins, that, "but for" their lawsuit, the Defendant would have continued to make false representations about that product to the public's disadvantage.[5]

In addition, the Defendant maintains that the only product, that is here at issue, is PB13, and that the Defendant's sale, and advertising, of any other serial of BIOCOM-DP is irrelevant, and that, in any event, the Plaintiff lacks standing to pursue a claim

[5]This argument is drawn from the defendant's argument in Behrens v. United Vaccines, see footnote 1, supra.

as to any product other than the one that they have alleged as causing them damage. Lastly, the Defendant urges that the Plaintiffs are incorrect in asserting that BIOCOM-DP remains on the market. While the Defendant admits that it was granted a one-time exception, so as to release certain serials of BIOCOM-DP in July of 2001, they represent that all other BIOCOM-DP serials have remained off the market.[6]

While we understand the Plaintiffs' argument, that there might be some benefit to the public occasioned by their success in this action, we cannot agree that such a metaphysical potential is sufficient to satisfy the public benefit requirement enunciated in Ly v. Nystrom. To be sure, the loss of any false advertising claim might counsel the advertiser to be more forthright in its advertisement of its other products, we see no real prospect of a public benefit, other than a theoretical one. In this respect, in Transclean Corp. v. Bridgewood Services, Inc., 134 F. Supp.2d 1049, 1054 (D. Minn. 2001), aff'd in relevant part, 290 F.3d 1364, 1379 (Fed. Cir. 2002), we determined that, notwithstanding the plaintiff's request for injunctive relief, it was not entitled to attorneys' fees, under the Private AG Statute, as the plaintiff was implicated in the same type of "false advertising," of which it accused the

[6]See footnote 5.

defendant, and because the plaintiff did not seek to prevent the successor to the defendant, who was paying a royalty to the plaintiff, from continuing with the same advertising. While we did not consider the precise issue raised here, under the CFA, as, in Transclean, the plaintiff sought injunctive relief to prevent false advertising that could damage other consumers in the public, in practical effect, we construed the Private AG Statute as precluding a claim for attorneys' fees, since the plaintiff, under the circumstances there, was unable to demonstrate any public benefit which warranted an award of fees.

More recently, the CFA was construed by the Court, in Pecarina v. Tokai Corporation, 2002 WL 1023153 (D. Minn., May 20, 2002). There, the plaintiff commenced an action against the manufacturers, distributors, and sellers of a lighter, which had been employed by her children to start an injury-causing fire. After reviewing the public benefit requirement, that was announced in Ly v. Nystrom, as well as the reasoning behind that decision, the Court found that the plaintiff had failed to demonstrate the requisite public interest. In so holding, the Court noted that the plaintiffs were seeking "damages for past and future medical expenses, pain and suffering, wage loss, and emotional distress," which evidenced that the "the essence of Plaintiff's lawsuit [was] personal injury, involving allegations of negligence and products liability." Id.

at *5. The Court concluded that, as those claims were meant to redress only the plaintiff's personal injuries, they did "not benefit the public." Id. Given the caveat voiced in Ly v. Nystrom, that "Plaintiffs may not craft their products liability suit to bring it within the ambit of the Private AG" Statute, the Court dismissed the plaintiff's CFA claim. Id.

For reasons we expressed in Transclean, we concur with that interpretation of the public benefit requirement. In reaching its decision, in Pecarina, the Court focused on the nature of the claims that were brought by the plaintiffs, and we believe such a focus is correct. Undoubtedly, any successful lawsuit, which recovers damages for an injury caused by a defective product, could have the potential to cause some public benefit. However, such a broad application of the Private AG Statute, to effect the purposes of CFA, was the precise type of misapplication that the Minnesota Supreme Court criticized in Ly v. Nystrom, supra at 312, when it warned that, unless the Private AG Statute was interpreted within its proper scope, "'every artful counsel could dress up his dog bite case' to come under an attorney's fees statute." As the Court observed, such a broad application would "substantially alter a fundamental principle of law deeply ingrained in our common law jurisprudence -- that each party bears his own attorney fees in the absence of a statutory or contractual exception." Id. at 314.

In view of these precepts, we conclude that, as they propose to plead the CFA claim, the Plaintiffs have failed "to demonstrate that their cause of action benefits the public." Id. The Plaintiffs' proposed claim seeks to redress only their own personal, business damages. They seek no equitable relief -- they do not request any future injunction on the Defendant's advertising, nor any injunction on the Defendant's marketing of any other BIOCOM-DP serial. Rather, they seek monetary compensation for what are, in every respect, personal and not public losses. In the event that the Plaintiffs were successful in such a CFA claim, and could show that the Defendant's representations were false and misleading, their success would have no direct impact on the Defendant's ability to represent the efficacy of any other BIOCOM-DP serial, other than the one at issue here -- a serial that was removed from the marketplace by the act of a Federal Agency, and not as a result of the Plaintiffs' suit. Under the governing law, the Plaintiffs are not entitled to employ the Private AG Statute as the vehicle to litigate a CFA claim, and therefore, they may not seek attorneys' fees as to a claim they may not litigate. In short, as they Plaintiffs have proposed to amend their Complaint, their CFA claim is not an action that could properly have been pursued by the Minnesota Attorney General, and consequently, they may not pursue the claim in the Attorney General's stead. Thus, any amendment of

the Plaintiffs' Complaint for the purpose of adding a CFA claim would be futile.

NOW, THEREFORE It is --

ORDERED:

That the Plaintiff's Motion for Leave to Amend Complaint Pursuant to Rule 15 of the Federal Rules of Civil Procedure [Docket No. 53] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE